```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

- - - - - - - - - - - - - - - - - -

```
GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the
November 27, 2004 Barrera/Morales     REPORT AND
Program,                              RECOMMENDATION

                         Plaintiff,   CV 2005-3698 (NGG)(MDG)


            - against -

GEORGE HUESCA, Individually and as
officer, director, shareholder
and/or principal of LA CAMPIRENA
MEXICAN REST., Co. d/b/a TAQUEIRA LA
CAMPIRENA MEXICAN RESTAURANT a/k/a
LA CAMCIRANA a/k/a LA CAMPIRANA
MEXICAN BAR a/k/a LA CAMPIRANA BAR
a/k/a TAQUERIA LA CAMPIRANA MEXICAN
RESTAURANT, and LA CAMPIRENA MEXICAN
REST., CO. d/b/a TAQUEIRA LA
CAMPIRENA MEXICAN RESTAURANT a/k/a
LA CAMCIRANA a/k/a LA CAMPIRANA
MEXICAN BAR a/k/a LA CAMPIRANA BAR
a/k/a TAQUERIA LA CAMPIRANA MEXICAN
RESTAURANT,

                        Defendants.
```

- - - - - - - - - - - - - - - - - -

GO, United States Magistrate Judge:

    Plaintiff Garden City Boxing Club, Inc. ("plaintiff") brings this action under Title 47 of the United States Code alleging that defendants George Huesca ("Huesca") and La Campirena Mexican Restaurant, Co. ("La Campirena") (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization,

a pay-per-view cable television broadcast.

After entry of default following defendants' failure to appear or otherwise defend in this action (ct. doc. 7-7), plaintiff's motion for default judgment was referred to me for a report and recommendation on damages and attorneys' fees. See ct. doc. 8.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1); the November 9, 2005 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") (ct. doc. 7-2); the November 23, 2005 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 7-3); and the December 11, 2004 affidavit of investigator Craig Carita ("Carita Aff.") (attached as Exhibit C to the Gagliardi Aff.). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5. Defendant La Campirena is a New York corporation with its principal place of business located at 4010 5th Avenue, Brooklyn, New York. Id. at ¶ 8. Defendant Huesca resides in the state of New York. Id. at ¶ 6.

Plaintiff owns the rights to distribute via closed-circuit

television and encrypted satellite signal the Barrera/Morales boxing match, including all undercard bouts and the entire television broadcast scheduled for November 27, 2004 (the "boxing match"). Id. at ¶ 12; Gagliardi Aff. at ¶ 3, Exh. A. Plaintiff entered into sub-license agreements with various entities to show the boxing match to their patrons. See Compl. at ¶ 13; Gagliardi Aff. at ¶ 3. The broadcast originated as a satellite uplink and was re-transmitted to cable and satellite providers via a satellite signal. See Comp. at ¶ 12.

Defendants did not contract with plaintiff, and thus, were not authorized to receive and publish the boxing match. Gagliardi Aff. at ¶ 6. As set forth in his affidavit, investigator Craig Carita observed the unauthorized public showing of the boxing match at La Campirena Restaurant to 17 customers. Carita Aff. at 1. Entering the establishment at approximately 10:35 p.m. on November 27, 2004, investigator Carita observed, inter alia, the seventh round of an undercard bout between Rafael Marquez and Mauricio "Pastrama [sic]." Id. The records of the Nevada Athletic Commission confirm that Rafael Marquez-Mendez fought Manricio Pastrana-Tapia in an undercard bout on November 27, 2007. See http://boxing.nv.gov/2004Results/11-27-04.pdf.

Following defendants' failure to answer the Complaint, plaintiff filed a motion for judgment by default on November 23, 2005. See ct. doc. 7.

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65; Directv,

Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II. Determination of Damages

   A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming.  Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication . . . or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions.  See also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).  When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply.  Id.

Plaintiff's submissions establish that the corporate defendant violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without authorization. Compl. at ¶¶ 15-16; Carita Aff. at 1. Plaintiff had the right to distribute the boxing match, which originated via satellite uplink. Gagliardi Aff. at ¶ 3. Investigator Carita observed the boxing match being displayed to customers at La Campirena Restaurant, a business operated by the corporate defendant, even though it had not contracted with plaintiff to do so. Gagliardi Aff. at ¶ 7. Consequently, this Court finds that defendant La Campirena's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

However, the liability of George Huesca, the individual defendant, involves different and additional considerations from the liability of the corporate owner of the restaurant. There is no evidence or well-pled allegation establishing that the violations were committed by defendant Huesca who has been sued individually and as an officer, director and/or shareholder of La Campirena. A party may be vicariously liable for infringement if she has the "right and ability to supervise" the infringing activities and has "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if he "authorized" the infringing conduct. See Sofitel Inc. v. Dragon Med. & Sci. Comm., 118 F.3d 955, 971 (2nd Cir. 1997); Sygma Photo News, Inc. v. High Soc. Magazine,

Inc., 778 F.2d 89, 92 (2d Cir. 1985) (persons "who participate in, exercise control over, or benefit from [an] infringement are jointly and severally liable as copyright infringers"); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc. 443 F.2d 1159, 1162 (2nd Cir. 1971). There is simply no allegation in any of the submissions regarding defendant Huesca's conduct. Nor has plaintiff provided any authority to establish that liability for cable theft under Title 47 may be imposed on corporate shareholders without proof of some participation. It is well-settled law that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999); see Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987). Thus, I recommend that no finding of liability be made against defendant Huesca and no judgment be entered against him.

    B.    <u>Damages</u>

Plaintiff requests damages pursuant to section 605, rather than section 553. See Pl. Mem. at 6. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs.,

Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount as the court considers just. See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative

history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $4,000 and enhanced damages of $12,000 for defendants' willful violation of section 605.  See Pl. Mem. at 6-7.  Some courts presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same).  Other courts have simply assessed a flat damages amount per violation.  See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibit of boxing match to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper

Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time exhibit of boxing match).

A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damages award based on $54.95 residential rate for each patron present during broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damages award of $989.10 based on $54.95 residential rate for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Plaintiff states that the residential rate for this broadcast was $54.95. See Gagliardi Aff. at ¶ 10(B).

Plaintiff has submitted evidence that 17 customers were

-10-

present at La Campirena Restaurant when investigator Carita observed the boxing match being illegally displayed. See Carita Aff. at 1. Accordingly, damages based on 17 customers multiplied by the residential rate of $54.95 would equal $934.15. Since the amount is less than the statutory minimum, I recommend that damages be awarded against defendant La Campirena in the amount of $1,000.

Further, I recommend that the Court award enhanced damages against defendant La Campirena. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004);

Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in the Complaint and the supporting affidavits clearly establish that La Campirena Restaurant is a commercial establishment that publicly displayed the Barrera/Morales boxing match to customers without authorization. Compl. at ¶¶ 8, 15; Carita Aff. at 1. Plaintiff's submissions support the inference that on November 27, 2004, La Campirena Restaurant displayed the boxing match for commercial gain in order to attract customers or retain customers who would patronize defendants' restaurant. Thus, I find that defendant La Campirena willfully acted to intercept the match without authorization and recommend enhanced damages equal to three times the amount of damages awarded under section 605(e)(3)(C)(i) for a total of $3,000. See Kingvision Pay-Per-View, Ltd. v. Echeverria, No. 06 CV 1266, 2007 WL 595025, at *4

(E.D.N.Y. Feb. 22, 2007); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983, 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting Googies Luncheonette, 77 F. Supp. 2d at 490-91).

### C. Injunctive Relief

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(B)(i). See Pl. Mem. at 8-9. "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting King v. Nelco Indus., Inc., No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)). Under both section 553(c)(2)(A) and section 605(e)(3)(B)(i), a court may grant an injunction as necessary to prevent further violations of either section.

Even where injunctive relief is available under the applicable statute, the party seeking an injunction must demonstrate irreparable harm and the threat of a continuing violation. N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004); Boisson v. Banian Ltd., 280 F. Supp.

-13-

2d 10, 15 (E.D.N.Y. 2003). Here, plaintiff has shown only a single violation of the statute and has not established that the monetary damages recommended above will be insufficient to deter future violations. Accordingly, I recommend denying plaintiff's request for a permanent injunction.

D.  <u>Attorneys' Fees and Costs</u>

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,937.50. Lonstein Aff. at ¶¶ 3-4. Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. <u>Int'l Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1009 (2d Cir. 1993) ("<u>Sykes I</u>"). The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 493 F.3d 110, 117-18 (2d Cir. 2007); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court

should exclude these hours from the lodestar calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on the prevailing marketplace rates in the community for similar services by a lawyer of reasonably comparable skill, experience, and reputation. See Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Arbor Hill, 493 F.3d at 118. The Court in Rotella found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates." Rotella v. Bd. of Educ. of City of New York, No. 01 CIV. 0434, 2002 WL 59106, at *2-*3 (E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate of lead counsel in a small

firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); see also SEC v. Goren, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks to recover $1,137.50 in attorneys' fees. Lonstein Aff. at ¶ 4.  In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein detailing the work done, hours expended, and the total amount due.  Id.  Ms. Lonstein states that attorney work totaled 4.75 hours at a rate of $200 per hour, totaling $950, and 2.5 hours of paralegal time was expended at a rate of $75 per hour, totaling $187.50.  Id.

Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys.  If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in this district.  See Rotella, 2002 WL 59106, at *2-3; see also Googies, 77 F. Supp. 2d at 491.

Furthermore, this Court questions the accuracy of the amount of time claimed even though the amount claimed by plaintiff is not substantial.  For example, plaintiff's counsel seeks compensation for 1.5 hours of work in drafting the complaint, an amount that plaintiff's counsel has claimed in a large number of cases brought for the theft of programming, as observed by a number of my colleagues.  In August 2005, plaintiff filed at

least 22 other actions in this district against various commercial establishments for unauthorized display of the Barrera/Morales match.[1] In 16 of those cases, the defendants defaulted and plaintiff's counsel sought compensation for 1.5 hours for drafting the complaint.[2] See also Kingvision Pay-Per-View, Ltd. v. Batista, No. CV-05-0614, 2005 WL 2999427, *1, *6-*7 (E.D.N.Y. October 6, 2005) (noting that same plaintiff's counsel affirmed that she expended 2.5 hours drafting complaint). The Court also notes that some portions of plaintiff's submissions were virtually identical. See id. While this Court understands the difficulty plaintiff may have in enforcing its licensing rights against widespread theft of programming and its desire to do so economically, the plaintiff has failed to meet its burden of providing sufficiently detailed records. See N.Y. State Ass'n, 711 F.2d at 1147-48.

Given the insufficient information submitted to support the rates claimed, I recommend that plaintiff be awarded fees for its attorneys' time at a rate of $175 per hour. In addition, due to my concern over the accuracy of time claimed, I recommend that

---

[1] See CV05-3680; CV05-3685; CV05-3687; CV05-3689; CV05-3691; CV05-3692; CV05-3693; CV05-3705; CV05-3706; CV05-3707; CV05-3708; CV05-3709; CV05-3710; CV05-3711; CV05-3712; CV05-3713; CV05-3714; CV05-3762; CV05-3897; CV05-3898; CV05-4119; CV05-4654.

[2] See CV05-3685; CV05-3687; CV05-3691; CV05-3692; CV05-3693; CV05-3705; CV05-3706; CV05-3708; CV05-3709; CV05-3710; CV05-3713; CV05-3714; CV05-3762; CV05-3897; CV05-3898; CV05-4119.

plaintiff's request for fees based on its attorneys' time be reduced by 20%. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (permitting courts to make an across-the-board reduction in the amount of hours for unreasonable claims). Accordingly, I recommend that plaintiff be awarded fees for 3.8 hours of its attorneys' time at a rate of $175 per hour and 2.5 hours of its paralegals' time at a rate of $75 per hour, for a total fee award of $852.50.

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks $800 in costs. In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein, attesting to the payment of $350 to the investigator for his services. Lonstein Aff. at ¶ 3, Exh. D (Signal Auditing Bill). This Court agrees that plaintiff may be entitled to recover costs incurred for the investigator since the investigation clearly was "incidental and necessary" to the prosecution of this case. See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68 (N.D.N.Y. 1998) (citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir. 1979)); see also Kingvision Pay-Per-View, Ltd. v. Autar, 426 F. Supp. 2d 59, 65-67 (E.D.N.Y. 2006); Rolex Watch U.S.A., Inc. v. Brown, No. 01 CIV. 9155, 2002 WL 1226863, at *4 (S.D.N.Y. June 5, 2002) (awarding investigative fees in trademark infringement action); Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigative fees recoverable as a cost under § 605); Video Aided Instruction, Inc. v. Y & S

Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees); Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (approving $75 rate for investigators as within "the reasonable range of rates" paid in the district). However, since the investigator arrived at the defendants' premises at 10:35 p.m. and left at 10:37 p.m., I find $350 in investigative fees to be excessive and recommend that this Court award only $100 in investigative costs. Although the investigator's invoice indicates that plaintiff was charged $350 for investigative fees, there is no evidence as to the investigator's hourly rate or how the amount charged was calculated. The amount awarded of $100 is generous considering the investigative work required in this case. Moreover, based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of establishments during the night that a particular boxing match is broadcast. See Garden City Boxing Club, Inc. v. Rojas, CV 2005-1047 (DGT) (MDG) (E.D.N.Y. Oct. 12, 2006), ct. doc. 13 at 18-19.

In addition, plaintiff seeks reimbursement for filing fees of $250 and service of process fees in the amount of $200. Lonstein Aff. at ¶ 3. Plaintiff's request for filing fees and service of process fees is reasonable, except that plaintiff should not recover the $100 fee for serving defendant Huesca

since I recommend that no judgment be entered against him.

Thus, I recommend that the Court award costs of $250 for the Court's filing fee, $100 for service of process fees and $100 for investigative fees, for a total of $450 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $1,000 in statutory damages, $3,000 in enhanced damages, $852.50 in attorneys' fees and $450 in costs, for a total judgment of $5,302.50 against defendant La Campirena. Further, I recommend that no judgment be granted against defendant Huesca.

A copy of this report and recommendation is being filed electronically on this date and sent via overnight delivery to defendants. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Nicholas G. Garaufis, the undersigned and the other party, on or before December 21, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:   Brooklyn, New York
         December 4, 2007

                                    /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE